44 F.3d 136
 148 L.R.R.M. (BNA) 2150, 129 Lab.Cas. P 11,266
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
1115 NURSING HOME AND SERVICE EMPLOYEES UNION, HOTEL
EMPLOYEES, RESTAURANT EMPLOYEES, AFL-CIO, Respondent,
United Health Care Facilities Association, Intervenor.
 No. 561, Docket 94-4049.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 17, 1994.
Decided Jan. 3, 1995.
 
 Richard M. Greenspan, Ardsley, NY (Richard M. Greenspan, P.C., of counsel), for respondent.
 David A. Fleischer, Sr. Atty., N.L.R.B., Washington, DC (Frederick L. Feinstein, Gen. Counsel, Linda Sher, Acting Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, of counsel), for petitioner.
 Morris Tuchman, New York City (Law Office of Morris Tuchman, of counsel), for intervenor.
 Before: OAKES, ALTIMARI and WALKER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Petitioner National Labor Relations Board (the "Board") seeks enforcement of its order of September 24, 1993, 312 NLRB 409, 1993 WL 382102 (the "Order"), requiring respondent 1115 Nursing Home and Service Employees Union ("Local 1115") to refrain from picketing West Lawrence Care Center, Inc. ("West Lawrence") for recognitional purposes for one year following the posting of a notice to that effect, and to refrain likewise for twelve months after losing a valid election. We grant enforcement.
 
 
 2
 Prior to a decertification election in 1990, Local 1115 represented the non-professional employees and licensed practical nurses at five nursing facilities, including West Lawrence, which had agreed to join together in a multi-employer bargaining unit known as the United Health Care Facilities Association (the "Association"). In 1989, employees at West Lawrence petitioned the Board to "secede" from Local 1115 and to form their own separate unit of a rival union, Local 1199, Drug, Hospital and Health Care Employees Union RWDSU, AFL-CIO ("Local 1199"), in order to be able to bargain separately with West Lawrence. The petitions were granted, and the West Lawrence employees participated in an election in which Local 1199 overwhelmingly defeated Local 1115 for the right to represent West Lawrence's employees. Local 1115 responded by threatening to picket West Lawrence on the ground that the election was invalid because West Lawrence had merged into the larger, multi-employer bargaining unit (the Association) so its employees could no longer bargain with West Lawrence as a separate unit. The Board issued its Order restraining Local 1115, and this litigation ensued.
 
 BACKGROUND
 
 3
 The Order follows three previous Board decisions in this case, all stemming from the attempt of the West Lawrence employees to decertify Local 1115 as their bargaining representative and to establish a separate unit comprised of only West Lawrence employees. In July 1989, West Lawrence employees and Local 1199 filed petitions for an election to decertify Local 1115 as the representative of West Lawrence's employees. The Board, over a dissent by Member Devaney, granted the petitions, finding that an election in the single-employer unit was appropriate (the "representation decision"). West Lawrence Care Ctr., Inc., 305 NLRB 212, 1991 WL 206174 (1991).
 
 
 4
 During the pre-election period, Local 1115 alleged unfair labor practices by West Lawrence. An ALJ found specific violations by both Local 1115 and West Lawrence, and the Board affirmed. 308 NLRB 1011, 1992 WL 259406 (1992). An election was held on May 17, 1990, and Local 1199 won with over 90 percent of the vote. On April 15, 1992, after a two-year delay, the Regional Director dismissed objections to the election, notwithstanding a finding of election-related unfair labor practices, and certified Local 1199 as the representative of the West Lawrence employees. The Board denied review on June 1, 1992.
 
 
 5
 Following Local 1199's certification, Local 1115 threatened to picket West Lawrence, claiming the election was invalid because West Lawrence had merged into the Association and so could not be reinstated as a single-employer bargaining unit. West Lawrence responded by filing an unfair labor practices charge, and the Board's General Counsel issued a complaint, alleging that Local 1115's threat violated Sec. 8(b)(7)(B) of the National Labor Relations Act (the "Act"), 29 U.S.C. 158(b)(7)(B) (1988), in that it took place less than 12 months after Local 1115 lost an election to represent West Lawrence's workers. The Board then granted the General Counsel's motion for summary judgment, concluding that all issues raised by Local 1115 could have been litigated in the prior representation proceeding. Accordingly, the Board found that Local 1115 had violated Sec. 8(b)(7)(B) by threatening to picket, and it issued the Order which it now seeks to enforce.
 
 DISCUSSION
 
 6
 Local 1115, supported by the Association as intervenor, challenges the Order primarily on the ground that the Board improperly directed an election in a bargaining unit limited to employees of West Lawrence, rather than concluding that the proper bargaining unit was the existing, multi-employer Association. Thus, most of the arguments raised by Local 1115 and the Association are directed at the merits of the Board's 1991 representation decision. They argue that the Board's decision finding a single-employee election appropriate must be overturned because (1) the record proves that a multi-employer bargaining unit has been in place since at least 1987, when Local 1115 and the individual employers submitted to Association-wide interest arbitration and an Association-wide award was announced; and (2) the larger unit, accordingly, was the only appropriate unit for a representation election. We find these arguments to be without merit.
 
 
 7
 The Board has long held that the presumption that a single-employer bargaining unit is appropriate can be overcome only by "clear evidence that the employers unequivocally intend to be bound in collective bargaining by group rather than by individual action." NLRB v. New York Typographical Union, 632 F.2d 171, 183 (2d Cir.1980) (quoting In re Pacific Metals Co., 91 NLRB 696, 699 (1950)). An agreement to bargain on a multi-employer basis is not enough; there must be actual bargaining on that basis. Arden Farms, 117 NLRB 318, 319 (1957); see also Etna Equip. & Supply Co., 236 NLRB 1578, 1578, 1978 WL 7653 (1978); Ruan Transport Corp., 234 NLRB 241, 242, 1978 WL 7191 (1978). Thus, however clear parties may have been in stating an intent to bargain on a group basis, their conduct thereafter must be consistent with this stated aim in order to constitute the evidence of unequivocal intent that is required. Ruan Transport, 234 NLRB at 242, 1978 WL 7191.
 
 
 8
 The Board's determination of an appropriate bargaining unit "involves of necessity a large measure of informed discretion, and the decision of the Board, if not final, is rarely to be disturbed." Packard Motor Car Co. v. NLRB, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947); Mercy Hosp. v. NLRB, 730 F.2d 75, 77-78 (2d Cir.1984). We may set aside the Board's determination only if it is arbitrary or not supported by substantial evidence. Mercy Hosp., 730 F.2d at 78.
 
 
 9
 In the representation decision, the Board ruled that a single-employer bargaining unit at West Lawrence remained appropriate at the time of the 1989 decertification petitions because the earliest unequivocal evidence of bargaining on a multi-employer basis was the October 18, 1988 execution of a written Association-wide collective-bargaining agreement. West Lawrence Care Ctr., Inc., 305 NLRB 212, 215-16, 1991 WL 206174 (1991). Consequently, the Board reasoned,
 
 
 10
 at the time the [decertification] petitions were filed, employees had worked in a unit governed by a multiemployer agreement for less than a year. We conclude ... that this brief identity as a multiemployer unit, balanced against the earlier long history of bargaining on an individual basis, should not preclude the West Lawrence ... employees from voting within that single-employer unit to determine whether they wish union representation and, if so, by which labor organization.
 
 
 11
 Id. at 215, 1991 WL 206174 (footnote omitted).
 
 
 12
 In support of the finding that multi-employer bargaining did not begin until October 1988, the Board cited the "significantly equivocal bargaining history prior to the execution of the multiemployer bargaining agreement in October 1988":
 
 
 13
 Although the record does include evidence consistent with the Employer's and [Local 1115's] claim that as early as 1985 [Local 1115], the Association, and the separate employers who had joined the Association began to interact with respect to collective bargaining ..., the record is also replete with indications that the prior history of single-employer bargaining continued well after that time to substantially affect the course of collective bargaining.
 
 
 14
 Id.
 
 
 15
 The record supports this finding. For instance, there is evidence that even after the formation of the Association in 1985, the nursing facilities continued to deal individually with Local 1115. Additionally, although Local 1115 and the individual employers agreed to submit to Association-wide interest arbitration, the awards announced by the arbitrator in 1987 were, the Board reasonably found, equivocal as to whether they constituted an Association-wide agreement or instead merely renewed and extended the facilities' existing individual contracts. Thus, substantial evidence supports the Board's finding that "the parties' prior history of single-employer bargaining remained operative as the separate employers began to bargain with [Local 1115] on a coordinated basis and that it did not definitively cease until the execution of the multiemployer agreement." Id. (footnote omitted).
 
 
 16
 Because multi-employer bargaining did not unequivocally commence prior to execution of the October 1988 contract, the Board found the 1989 petitions for a single-employer unit at West Lawrence appropriate. In so holding, the Board was obliged to recognize an exception to the general rule, see Mo's West, 283 NLRB 130, 1987 WL 109283 (1987), that a petitioned-for unit in a decertification election must be coextensive with the recognized bargaining unit. The Board accepted the validity of the general rule, which normally precludes petitions to reinstate single-employer units that have been merged into larger units. It held, however, that the "unusual circumstances" of this case--a long history of single-employer bargaining followed by a brief period of multi-employer bargaining--brought it within an exception to the rule which rendered the single-employer unit appropriate. 305 NLRB at 216, 1991 WL 206174 (citing Miron Building Prods. Co., 116 NLRB 1406, 1407-08 (1956)). The Board concluded:
 
 
 17
 In the present case, as in Miron, [West Lawrence's] unit employees have had a distinct identity in a single-employer unit for a significant period of time (approximately 15 years). The period between the unequivocal appearance of a multiemployer unit (October 18, 1988) and the filing of the election petitions (July 1989) was of "brief duration," i.e., less than a year. In these circumstances, we will not apply the Board's unit merger doctrine to block an election in the single-employer unit.
 
 
 18
 Id. at 217, 1991 WL 206174 (footnote omitted). In reaching this conclusion, the Board noted, it weighed "the interest in the stability of collective-bargaining relationships against the interest in assuring employees' freedom of choice." Id. (citing Gibbs & Cox, 280 NLRB 953, 954-55, 1986 WL 54017 (1986)).
 
 
 19
 In so concluding, the Board was required to distinguish its previous decision in Wisconsin Bell, Inc., 283 NLRB 1165, 1987 WL 89651 (1987). There the Board held that where a merger agreement has been reached, "the larger, merged unit is the only unit appropriate for purposes of a representation election." Id. at 1165, 1987 WL 89651. The Board here distinguished Wisconsin Bell on the ground that in that case the single-employer unit had existed for a far briefer period--only a few days--before being merged into a larger unit, and the larger unit survived for a longer period before being challenged. West Lawrence, 305 NLRB at 217 n. 27, 1991 WL 206174.[1] The Board "disavow[ed] reliance" on Wisconsin Bell "to the extent it embraces principles inconsistent with Miron Building Products." Id.
 
 
 20
 Member Devaney, in a dissent relied on by Local 1115 and the Association, took issue with what he characterized as the majority's overruling of Wisconsin Bell, and contended that the majority's ruling "undermines the very goal of bargaining stability that it seeks to ensure." Id. at 218, 1991 WL 206174 (Devaney, dissenting).
 
 
 21
 It is not our role, however, to second-guess the kind of policy determination made by the Board in this case. As the Supreme Court has stated, when the Board "engages in the 'difficult and delicate responsibility' of reconciling conflicting interests of labor and management, the balance struck by the Board is 'subject to limited judicial review.' " NLRB v. J. Weingarten, Inc., 420 U.S. 251, 267, 95 S.Ct. 959, 968, 43 L.Ed.2d 171 (1975) (quoting NLRB v. Truck Drivers Local Union No. 449, 353 U.S. 87, 96, 77 S.Ct. 643, 647, 1 L.Ed.2d 676 (1957)). In the case before us, the Board, carefully balancing the interest in bargaining stability against employees' interest in freedom of choice, struck the balance in favor of freedom of choice; accordingly, it chose to follow its prior decision in Miron and to distinguish the circumstances before it from those of Wisconsin Bell. In light of the Board's carefully reasoned opinion, we cannot conclude that the Board acted arbitrarily.
 
 
 22
 We have considered the remaining arguments of Local 1115 and the Association, including their contentions that the Board abused its discretion in upholding the 1990 election despite unfair labor practices by West Lawrence and in certifying Local 1199 as the bargaining representative of the unit employees almost two years after the election was held. We find these arguments to be without merit.
 
 CONCLUSION
 
 23
 Accordingly, the Order is enforced in all respects.
 
 
 
 [1]
 Since the representation decision here, the Board has elaborated on this distinction. In Albertson's, Inc., 307 NLRB 338, 338-39, 1992 WL 91243 (1992), the Board noted that in Wisconsin Bell, the separate unit had existed for only 11 days and the merged unit for 15 years, while in West Lawrence the single-employer unit had existed for 15 years and the multi-employer unit for only nine months. In Albertson's, the Board found Wisconsin Bell controlling, as the separate unit in that case had existed for only four months and the merged unit for ten months